# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NATHAN P. GOLDSTEIN, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' BENEFIT FUNDS,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>BATISTA CONTRACTING LLC and ROCHESTER BITUMINOUS PRODUCTS, INC.,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 22-cv-10807-PBS |

## *EX-PARTE* MOTION FOR PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING ORDER, AND PREJUDGMENT ATTACHMENTS

Pursuant to the Employee Retirement Income Security Act of 1974 § 502(a)(3), 29 U.S.C. § 1132(a)(3), and Federal Rules of Civil Procedure 64 and 65, Plaintiff Nathan P. Goldstein, as he is Executive Director of the Massachusetts Laborers' Benefit Funds ("Plaintiff" or "Funds"), respectfully requests that this Court grant (1) a preliminary injunction compelling the Defendants, Batista Contracting LLC ("Batista") and Rochester Bituminous Products, Inc. ("Bituminous") (collectively, "Defendants" or "Companies"), to permit an audit of their records in order that Plaintiff may determine the amount of benefit contributions owed to the Funds; (2) a temporary restraining order prohibiting the Defendants from conveying or dissipating assets or funds except for documented legitimate business expenses; and (3) order prejudgment attachment of Defendants' bank accounts and assets up to the value of $1,812,362.20.

As grounds for this motion, Plaintiff states as follows:

1.　　Plaintiff brought this action under §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), 1145, and § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185, to enforce the Defendants'

obligations to contribute to employee benefit funds on behalf of their laborer employees. Plaintiff alleges that Bituminous is the alter-ego of Batista and that the Companies operate as a single employer with a single appropriate bargaining unit, and therefore, contributions are owed for all hours worked by laborer employees of both Companies.

2. Earlier this year, the parties jointly moved to stay this litigation in order to engage in mediation. See ECF Nos. 20 and 21. As noted in those filings, Plaintiff's agreement to mediate was conditioned on Defendants' agreement to provide certain documents needed by the Funds' auditors to liquidate the Funds' claim, and Defendants' agreement not to transfer assets except in the normal course. Defendants only partially complied with these conditions and provided some documents for Bituminous and another closely related company, Rochester Paving Co., Inc. ("Paving").[1] The Defendants abruptly canceled mediation two days before it was set to occur.

3. The parties agreed that the documents provided by Defendants for the purpose of mediation would be treated as confidential pursuant to the mediation statute, and therefore Plaintiff is unable to cite to them as evidence for this Motion. All of the evidence contained in the accompanying Memorandum of Law and the declarations attached thereto was obtained independent of the pre-mediation document production. Thus, the evidence submitted in these pleadings detailing Defendants' deceptive behavior is but the tip of the iceberg.

4. Plaintiff is likely to be successful in his claims against Defendants. There is no dispute that Batista is obligated to make contributions to the Funds for each hour worked by its laborer employees and that it is required to cooperate with an audit request from the Funds. There is substantial evidence that Bituminous is an alter-ego of Batista and that the Companies operate as a single employer with a single appropriate bargaining unit. For instance, certified

---

[1] Plaintiff is also moving by separate motion to add Paving as a defendant to this lawsuit. Once added to this lawsuit, the Funds anticipate moving to request that injunctive relief also be extended to Paving.

payroll records show substantial employee crossover between the two Companies. Nearly all of Batista's laborer employees regularly worked for Bituminous, performed the same kind of work, and used the same tools and equipment. Evidence also shows that the Companies did not maintain an arm's length relationship, failed to keep accurate records of their employees' work, and submitted fraudulent or misleading documentation to awarding authorities.

5. There is a substantial likelihood that Plaintiff will recover a judgment, including unpaid contributions, interest, liquidated damages, and attorney's fees and costs, in an amount equal to or greater than the amount of the attachments. As explained more fully in the Memorandum of Law submitted herewith, the Funds' estimate of contributions owed is a *conservative estimate* based on hours *self-reported by Bituminous* on its certified payroll records, the self-reported hours which the Funds have good reason to believe is lower than the real number of hours actually worked by the Companies' laborer employees.[2]

6. The Funds will suffer irreparable harm absent an order from this Court requiring Batista and Bituminous to submit to an audit and prohibiting Defendants from conveying or dissipating assets because there is substantial evidence suggesting that Bituminous and Batista deliberately deprived their employees and the Funds of benefits owed to them. Without the audit, the Funds will be unable to fully calculate the contributions owed. Defendants have ignored multiple requests by the Funds to conduct an audit, demonstrating that they are unwilling to comply with their contractual and legal obligations without being ordered to do so. Meanwhile, some of Defendants' laborer employees have already lost out on health insurance and pension and annuity credits to which they are entitled, and many more may continue to lose out on the same. Moreover, the failure of contractors such as Defendants to report and pay contributions has

---

[2] Defendants' certified payroll underreporting is detailed in the Declaration of Colin McAnarney at ¶¶ 14-16.

a deleterious effect on the financial stability of the Funds' trust corpus and consequently the ability of the Funds to meet obligations to their beneficiaries. This harm is compounded when, as here, the Funds are forced to expend additional resources to compel Defendants' compliance with basic contractual requirements.

7. In addition, Bituminous and three of its principals were recently cited by the Attorney General's Wage and Hour Division for recordkeeping violations and for failure to pay Prevailing Wages, and Bituminous, its manager, Albert Todesca, and Bituminous' accountant were also indicted for tax fraud and conspiracy, suggesting that Defendants' willingness to shirk legal obligations is not limited to this matter. Defendants' refusal to engage with the Funds and permit an audit has left Plaintiff with little choice but to seek a preliminary injunction and prejudgment attachments to protect the Funds' claims.

8. Injunctive relief is specifically authorized by ERISA, 29 U.S.C. § 1132(a)(3). There is no harm to Defendants in the Court's granting of a preliminary injunction because compelling the audit would do no more than require Defendants to comply with their existing contractual and legal obligations. Moreover, issuing a temporary restraining order prohibiting Defendants from transferring or dissipating assets except for normal businesses expenses would not harm Defendants either, because such an order would not interfere with the Defendants' ability to continue operating and would merely require Defendants to observe the norms of corporate good governance that the law already requires.

9. The attachment of Defendants' bank accounts and personal property vehicles is necessary to protect Plaintiff's claims. The inability to collect contributions has a deleterious effect on the financial stability of the trust corpus and consequently the ability of the Funds to meet their obligations to participants and beneficiaries. Such equitable relief is specifically

authorized by Section 502 of ERISA, 29 U.S.C. § 1132(a)(3), and Plaintiff has an obligation to "discover the location of the trust property and to take control of it without unnecessary delay." Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 572-73 (1985).

WHEREFORE, Plaintiff respectfully requests that the Court order the following relief:

1. Issue a preliminary injunction ordering Defendants to comply with Plaintiff's audit and provide payroll and all other requested records for the period May 1, 2017 through the date of this Court's Order, within ten (10) days of this Court's Order.

2. Issue a temporary restraining order pursuant to Rule 65, enjoining Defendants:

    a. from conveying or transferring assets or funds except in the normal course of business and with a documented legitimate business purpose;

    b. from transferring any assets such as trucks and equipment; and

    c. from transferring any funds, assets, or property to any related entity or individual.

3. Attach the following assets of Defendants' up to the value of $1,812,362.20:

    a. by Trustee Process, Defendants' bank accounts at Martha's Vineyard Savings Bank; and

    b. the vehicles and equipment listed on Appendix A to the Proposed Order of Attachment.

In support of this Motion, Plaintiff relies on his Memorandum of Law and the declarations and exhibits submitted therewith.

WHEREFORE, the Plaintiff requests that this Court issue the proposed Temporary Restraining Order, and Finding and Order of Approval of Attachments, and the proposed Summons to Trustee, all attached as Appendix A herewith.

Respectfully submitted,

NATHAN P. GOLDSTEIN, as he is
EXECUTIVE DIRECTOR, MASSACHUSETTS
LABORERS' BENEFIT FUNDS,

By his Attorneys,

/s/ Sasha N. Gillin
Sasha N. Gillin, BBO No. 690769
Sophie C. Esquier, BBO No. 698875
SEGAL ROITMAN, LLP
33 Harrison Avenue, 7th Floor
Boston, MA 02111
(617) 742-0208, Ext. 258
sgillin@segalroitman.com
sesquier@segalroitman.com

Dated:  January 5, 2023